# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 16-CR-867-GPC |
| Plaintiff, | **ORDER DENYING MOTIONS TO DISMISS AND MOTION FOR GRAND JURY TRANSCRIPTS** |
| vs. | [ECF Nos. 21, 32.] |
| EDWIN FULLER, | |
| Defendant. | |

## INTRODUCTION

Defendant Edwin Fuller ("Defendant" or "Fuller") moves to (1) compel discovery, (2) dismiss the indictment because it is facially defective, (3) dismiss the indictment for improper venue, and (4) order the Government to produce transcripts of the grand jury proceedings. (Dkt. Nos. 21 and 32.) The Government

has filed oppositions regarding discovery, proper venue and the request for grand jury evidence. (Dkt. No. 22 at 25; Dkt. No. 33 at 3–7.) Hearings were held on the motions on May 19 and June 28, 2017. Upon review of the pleadings and consideration of the arguments of counsel and the applicable law, Defendant's motions are **DENIED**.

## BACKGROUND

### A. Procedural Background

On January 12, 2016, Defendant was charged in a complaint with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. No. 1.) On April 21, 2016, the grand jury returned a one-count indictment alleging that Defendant participated in a conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. No. 3.) The indictment charges Defendant with "knowingly and intentionally [conspiring] with other persons . . . to distribute controlled substances, to wit: oxycodone, a Schedule II Controlled Substance; in violation of 21 U.S.C. §§ 841(a)(1) and 846." (*Id.*)

On April 28, 2017, Defendant filed the instant Motion to Dismiss Indictment Due to Improper Venue. (Dkt. No. 21.) On May 12, 2017, the Government filed a response and opposition. (Dkt. No. 22.) On July 14, 2017, Defendant filed supplemental briefing in support of his Motion to Dismiss, further arguing that the indictment is facially defective and requesting that the Court order the Government

to produce transcripts of the grand jury proceedings.  (Dkt. No. 32 at 7–10.)  On July 21, 2017, the Government filed a supplemental response opposing Defendant's motions.  (Dkt. No. 33.)

### B. Factual Background

#### 1. The Complaint

The affidavit in support of the Complaint by Drug Enforcement Administration Special Agent Rockwell Herron describes the criminal activities of the Moore Drug Trafficking Organization ("Moore DTO") and Defendant's participation in the DTO from 2012 and 2014.  (Dkt. No. 1 at 3–6.)  It alleges that the Moore DTO acquires and distributes scheduled pharmaceutical drugs ("SPDs").  (*Id.* at 3.)  The affidavit provides background to the investigation of Defendant and describes Defendant's attempts to fill counterfeit prescriptions on December 7, 2012 in Gilroy, California with the assistance of Reginald Flowers.  (*Id.* at 3–6.)  The Complaint states that Defendant pled guilty to state criminal charges relating to the Gilroy criminal actions and that they are not the basis for the charges in the Southern District of California.  (*Id.* at 4.)  Instead, the instant charges are alleged to "stem from Fuller's acts in furtherance of a multi-jurisdictional conspiracy to acquire and distribute SPDs on behalf of the Moore DTO."  (*Id.*)

///

## 2. December 7, 2012 events in the Northern District of California

On December 7, 2012, Fuller presented a fraudulent prescription and a counterfeit California Driver's License ("CDL") at Nob Hill pharmacy in Gilroy, California. (Dkt. No. 1 at 3.) The counterfeit CDL in "Dan Mitchell's" name contained Fuller's photograph. (*Id*.) Later that same day, Fuller also presented another fraudulent prescription for oxycodone and another counterfeit driver license at a Walgreens pharmacy in Gilroy, California. (*Id*.) This counterfeit driver's license also contained Fuller's photograph. (*Id*.)

A short time later, after being observed leaving the Walgreens pharmacy, Gilroy Police Officers ("GPD") conducted a traffic stop of Fuller [Passenger] and Reginald Flowers ("Flowers") [Driver]. (*Id*.) After Fuller admitted to GPD officers that he was on parole, GPD officers performed a parole search and found a counterfeit CDL which contained Fuller's photograph. (*Id*. at 3–4.) GPD officers also found a purse which contained pharmacy prescription labels ("Prescription Labels") for oxycodone in the names of various "patients." (*Id*. at 4.) The Prescription Labels detailed numerous prescriptions for oxycodone tablets that were filled at various pharmacies in the Gilroy/San Jose/Salinas, California areas. (*Id*.) GPD officers also found a blue spiral bound notebook ("Notebook"). (*Id*.) The Notebook contained handwritten notes regarding pharmacy names, addresses, telephone numbers, and information about pharmacy hours, "patient names,"

4

prices, and stock check results. (*Id.*) Police also seized a cell phone from Fuller and one from the car. (Dkt. No. 21-1 at 4.)

On February 15, 2013, Fuller pled guilty to two California state felony counts of Prescription Fraud for his attempts to acquire oxycodone at Nob Hill and Walgreens Pharmacy on December 7, 2012. (Dkt. No. 1 at 4; Dkt. No. 21-1 at 4.) He was sentenced to 140 days in custody but remained in custody from December 7, 2012 to December 15, 2013, on a parole violation and a pending case out of Los Angeles County. (Dkt. No. 21-1 at 4.)

### 3. Events in the Southern District of California

#### a. Events Concerning House's Arrest in 2013

According to CS-1,[1] Defendant Fuller is a mid-level member of the Moore DTO who recruited Ashley House to fill fraudulent prescriptions on the organization's behalf. (Dkt. No. 22 at 2.) On or about October 5, 2013, CS-1 met with House, gave her $80 cash, and instructed her to have her photographs taken so that counterfeit CDLs could be made. (Dkt. No. 22 at 3.) House did as instructed, and several CDLs were made containing her photograph but listing various names and dates of birth. (*Id.*) Subsequently, House allegedly filled six fraudulent prescriptions on behalf of the Moore DTO in the cities of Vista, Oceanside, and El

---

[1] In January 2014, CS-1 was arrested in Brawley, California while attempting to fill forged oxycodone prescriptions. (Dkt. No. 22 at 2, 8.) Following CS-1's arrest, CS-1 admitted to being a member of the Moore DTO. (Dkt. No. 22 at 2.)

Cajon, California within the Southern District of California. (*Id.* at 3–4.)

Following these six fraudulent prescriptions, on October 22, 2013, House and Gilbert Williams ("Williams") travelled to El Cajon for the purpose of acquiring oxycodone tablets with fraudulent prescriptions. (*Id.* at 5.) Williams presented a fraudulent prescription for 180 oxycodone 30 mg tablets at Clark's Greenfield Pharmacy, as House waited in the car. (*Id.*) While Williams returned to the car to wait for the prescription to be filled, El Cajon Police officers arrived and arrested Williams and House on prescription fraud charges. (*Id.*)

### b. Flowers and Angstadt's Arrest in January 2014

On January 30, 2014, Reginald Flowers ("Flowers") and Tiffany Angstadt ("Angstadt"), members of the Moore DTO, were arrested on federal drug charges while attempting to fill forged oxycodone prescriptions in Brawley, California. Brawley is a city located within the Southern District of California.

Similarly, subsequent to his arrest, Flowers described the Moore DTO as "an organized group of individuals who regularly used fraudulent medical prescriptions to acquire oxycodone from commercial pharmacies throughout California." (Dkt. No. 1 at 5.) Flowers stated that he and Defendant Fuller were working together in Gilroy to acquire oxycodone for the Moore DTO. (Dkt. No. 22 at 8.) Flowers also stated that he and Angstadt were working together in Brawley to acquire oxycodone for the Moore DTO. (*Id*.)

Although Flowers was initially cooperative, he later refused to cooperate with investigating agents. The Government reports that Flowers was not paid or reimbursed for any information he provided to the government and that he has criminal convictions for four misdemeanors and a 2013 felony conviction.

## Discussion

**A. Ongoing Discovery Issues Regarding the Alleged Conspiracy**

Fuller filed a general motion for discovery on January 16, 2017. (Dkt. No. 16) Thereafter, on April 28, 2017, Fuller filed a motion to compel discovery and asserted that the Government had only provided discovery regarding the December 2015 Gilroy arrest and had failed to provide discovery regarding the alleged conspiracy. On May 12, 2017, the Government filed its response to the discovery motion which incorporated an 18 page statement of facts describing the details of the charged conspiracy based partially upon statements attributed to CS-1. The Government states that it is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), and intends to comply with them. (Dkt. No. 22 at 20).

In her supplemental discovery motion, defense counsel asserts that as of July 14, 2017, she had received minimal discovery supporting the allegations in the indictment and the factual summary in the Government's response pleading. In addition, defense counsel complained that the Government failed to provide

promised cell phones and forensic extractions of CS-1 and Angstadt, and statements of alleged co-conspirators who implicated Fuller. Instead, the Government has merely provided a viewing of Angstadt's statements but will not provide a copy of the statements to defense counsel for review outside of the U.S. Attorney's Office.

On July 21, 2017, the Government filed its supplemental response to the discovery motion and reported that it had provided 732 pages and 13 compact discs of discovery. (Dkt. 33 at 2). As to cell phones, the Government explained that it encountered technical difficulties in extracting cell phone data. In addition, the Government expressed concerns with providing Jencks Act materials prematurely given its safety concerns for CS-1 and CS-2. On the same date that it filed its supplemental response, the Government presented, in camera, identifying information for CS-1 and CS-2, and a summary of evidence describing the risk of harm that the cooperating sources face. In view of these risks, the Government has proposed an Attorney Eyes' Only ("AEO") protective order to address both the safety concerns of the United States' witnesses while balancing the need for the defense to have adequate time to prepare for trial. The United States proposes to produce the names of its cooperating witnesses to defense counsel (and one designated investigator) only, no later than three weeks prior to trial. The protective order will not permit defense counsel to disclose the names of these

cooperating witnesses to the defendant in any manner whatsoever. The United States further proposes disclosure of the names of its cooperating witnesses to defendant no earlier than three days prior to that witness testifying at trial.

At this point, it is instructive to recognize that the conspiracy case against Fuller is based on a historical investigation that depends upon the co-conspirator testimony of Moore DTO members who have reported historical facts regarding the conspiracy and Fuller's involvement in it. Statements of co-conspirators qualify as Jencks Act statements and are not discoverable until the witness testifies absent an order of the Court directing that the statements be provided earlier. In this case, the Court finds that based upon the in camera submission there is good cause to take steps to protect the safety of cooperating witnesses. Premature release of the confidential source identifying information is likely to result in intimidation or retaliation against the cooperating sources which would adversely impact the presentation of the Government's case. The Court will direct that the Government turn over Jencks' statements three weeks before trial under an AEO protective order which discloses of the names of its cooperating witnesses to defendant no earlier than three days before the commencement of trial.

**B. Whether the Indictment Should Be Dismissed Because It Is Facially Defective**

Defendant moves to dismiss the indictment asserting that the indictment

provides "no information as to the specific allegations underlying the conspiracy count, effectively precluding the preparation of a constitutionally effective defense." (Dkt. No. 32 at 7.) More specifically, Defendant claims that the indictment is lacking because "it lists no co-conspirators by name and includes a time period spanning approximately 15 months, with no mention of specific acts taking place within that period." (*Id.*)

Federal Rule of Criminal Procedure 7 provides "the indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is defective, and must be dismissed, when it fails to include the essential elements of the alleged crime. *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979). This requirement represents the constitutional guarantee under the Sixth Amendment to inform a criminal defendant "of the nature and the cause of the accusation." *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir. 1987) (quoting U.S. Const. amend VI).

However, a review of the indictment need "not be overly technical." *United States v. Cote*, 929 F. Supp. 364, 366 (D. Or. 1996). The prosecution must only state "the essential facts necessary to apprise [the defendant] of the crime charged; the government [is] not required to allege its theory of the case or list supporting evidence to prove the crime alleged." *United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir. 1991)(citations omitted). "In fact, an indictment that sets forth the

charged offense in the words of the statute itself is generally sufficient." *Id.*

In *United States v. Tavelman*, 650 F.2d 1133, 1137 (9th Cir. 1981), defendants contended that their indictments charging a drug conspiracy failed either to contain a substantive count or to allege essential facts or overt acts, and were therefore constitutionally defective. The court observed that an indictment under 21 U.S.C. § 846 is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege or prove any specific overt act in furtherance of the conspiracy. *Id.* (quoting *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978), *overruled on other grounds*, *United States v. Rodriguez*, 612 F.2d 906, 919 & n.35 (5th Cir. 1990) (*en banc*) (*by implication*). The *Tavelman* court concluded that the indictments were sufficient since they contained the specific dates of their alleged criminal violations, the statutory provisions under which the indictments issued, and brief descriptions in statutory terms of the nature of the criminal activity alleged. 650 F.2d at 137.

Here, Fuller is likewise charged with violating 21 U.S.C. § 846(a)(1). Fuller also challenges the lack of a substantive offense or a listing of overt acts and contends that the indictment effectively denies him the ability to prepare his defense. *See United States v. Livington*, 725 F.3d 1141, 1145 (9th Cir. 2013) (citation omitted) (an indictment must describe the charges against a defendant

sufficient to enable him to prepare his defense). However, as seen in *Tavelman*, 21 U.S.C. § 846 does not require the Government to allege any overt acts or substantive counts to comply with Rule 7.

Here, Defendant's indictment "tracks the words of the statute." *Davis*, 336 F.3d at 922. The indictment states that:

> Beginning no later than in or about August 2012 up to including October 22, 2013, within the Southern District of California, and elsewhere, defendant EDWIN FULLER did knowingly and intentionally conspire with other persons known and unknown to the grand jury, to distribute controlled substances, to wit: oxycodone a Schedule II Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1)[2] and 846[3].

The elements for 21 U.S.C. § 826 are (1) that beginning on or about a certain date and ending on or about a specific date, there was an agreement between two or more persons to distribute a specific controlled substance and (2) that the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose. 9th Cir. Model Crim. Jury Instr. No. 9.19. Fuller's indictment set forth these elements because it indicates a time period in which an agreement with "other persons known and unknown to the grand jury" existed and states that Defendant "knowingly and intentionally" conspired with others "to

---

[2] 21 U.S.C. § 841(a)(1) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance[.]"

[3] 21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

distribute controlled substances[.]" (Dkt. No. 3.)

Moreover, Fuller cannot demonstrate any prejudice from the lack of specificity in the indictment. Fuller has been and will be provided with further details regarding the charged conspiracy in discovery to permit him to prepare a defense. While a bill of particulars or discovery cannot save a "defective indictment," *United States v. Panzavecchia*, 421 F.2d 440, 442 (5th Cir. 1970), where the indictment has been found even minimally sufficient, a court may look to the record as a whole in determining whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant has had an adequate opportunity to prepare his defense. *See United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). Further, while "an indictment must provide the essential facts necessary to apprise a defendant of the crime charged," "it need not specify the theories or evidence upon which the government will rely to prove those facts." *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993).

In the present case, the indictment notifies Fuller as to the specific dates of the alleged criminal violations, the statutory provisions under which the indictment was issued, and a brief description in statutory terms of the nature of the criminal activity alleged. Consequently, the indictment is not facially defective to warrant a dismissal.

**C. Whether the Indictment Should be Dismissed for Improper Venue**

Next, Fuller argues that the indictment should be dismissed for improper venue because the evidence directly implicates him in events that only occurred in the Northern District of California and the Government has failed to establish a nexus between Defendant and the Southern District of California. (Dkt. No. 21-1 at 15; Dkt. No. 32 at 8.) The Government contends that Defendant took part in a conspiracy involving the Moore DTO and that acts in furtherance of the conspiracy took place in the Southern District of California. (Dkt. No. 22 at 25–26.)

The United States Constitution provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. Further, the Sixth Amendment specifically directs that criminal trials be held before an impartial jury "of the State and district wherein the crime shall have been committed." U.S. Const. amend XVI. Federal Rule of Criminal Procedure 18 also maintains that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

Venue is generally a "question of fact that the government must prove by a preponderance of the evidence." *Lukashov*, 694 F.3d at 1120. In evaluating the venue of any given prosecution, a court must "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526

U.S. 275, 279 (1999).

However, given that Defendant raises a pretrial challenge of venue pretrial, the Court may only consider the indictment. *Jensen*, 93 F.3d at 669. The truth of the allegations is presumed and a defendant may not challenge a facially valid indictment on the ground that it is not supported by adequate evidence. *Id.* "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. . . . The Court should not consider evidence not appearing on the face of the indictment." *Id.* (citation omitted).

Congress has provided that venue for a continuous crime, such as conspiracy, lies in any district where the "offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Even if Defendant had not known where his coconspirators would obtain prescriptions in furtherance of the conspiracy, 18 U.S.C. § 3237(a) "does not require foreseeability to establish venue for a continuous offense." An indictment only needs to contain a bare-bones allegation that criminal activity took place in the venue. *See United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997). The Court may not weigh any evidence presented by a defendant to challenge an assertion that the criminal activity took place in the venue stated in an indictment. *Jensen*, 93 F.3d at 669–70.

Here, the indictment states that the offense took place within the "Southern District of California and elsewhere." Assuming these facts as true, venue

properly lies in the Southern District of California. Defendant remains free to challenge venue before the jury. However, the indictment is sufficient to withstand Defendant's pretrial venue challenge.

### D. Whether Defendant's Request for Grand Jury Evidence Should Be Granted

It is axiomatic that an indictment returned by a legally constituted and unbiased grand jury is valid on its face, and is enough to call for a trial of the charge on the merits. *United States v. Williams,* 504 U.S. 36, 54 (1992); *Bank of Nova Scotia v. U.S.,* 487 U.S. 250, 261 (1988). In addition, grand jury proceedings are presumed lawful and regular. *Hamling v. United States,* 418 U.S. 87, 139 n. 23 (1974)). Disclosure of grand jury proceedings is available only by court order, and a defendant bears the burden of establishing a "particularized need" or "compelling necessity" for disclosure which outweighs the policy of grand jury secrecy. Fed. R. Crim. P. 6(e); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 (1979).

Here, Fuller requests an order directing the Government to produce transcripts of the grand jury proceedings based upon "the shifting nature of the government's factual assertions regarding Mr. Fuller's ties to the Moore DTO and venue." (Dkt. No. 32 at 9.) Defendant argues that the transcripts may reveal grounds for dismissing the indictment. (*Id.*) The Government contends that

16

16cr1248-GPC

Defendant has not articulated a specific reason or acceptable ground for requesting the grand jury witness transcript. (Dkt. No. 33 at 7.)

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before a grand jury[.]" Disclosure is committed to the discretion of the trial judge. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959).

A long-established policy maintains the secrecy of the grand jury proceedings in the federal courts, and when disclosure is permitted, it is to be done discretely and limitedly. *Dennis v. United States*, 384 U.S. 855, 860 (1966) (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681, 673 (1958)). "To make public any part of [the grand jury's] proceedings would inevitably detract from its efficacy." *Pittsburgh Plate Glass Co.*, 360 U.S. at 400. Consequently, "[i]n considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon grand jury proceedings, but also the possible effect upon the functioning of future grand juries." *Douglas Oil Co.*, 441 U.S. at 222.

"A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a 'particularized need exists . . .
17

16cr1248-GPC

which outweighs the policy of secrecy.'" *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (quoting *Pittsburgh Plate Glass Co.*, 360 U.S. at 400). The defense carries the burden of showing that a particularized need for the transcript exists which outweighs the policy of secrecy. *Pittsburgh Plate Glass Co.*, 360 U.S. at 400.

Here, Defendant claims that there may be a "fatal variance" between the indictment and the proof intended to be used at trial. Fuller asserts that the complaint alleges proper venue through text messages between Angstadt and Fuller but the Government's responses do not mention such text messages to justify venue. Fuller argues that it is reasonable to infer that at the time of the grand jury proceedings, the government established venue via non-existent text messages and that, at trial, the government will offer materially different facts to support venue. The argument fails to recognize that the indictment, not the complaint, is the operative pleading at this time, and that the indictment makes no reference to texts so there is no variance between the indictment and the proof intended to be used at trial on the issue of venue.

In light of the above, Fuller has wholly failed to meet his burden of showing a "particularized need" or "compelling necessity" for disclosure which outweighs the policy of grand jury secrecy. Thus, Defendant's request for grand jury evidence is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant Fuller's Motion to Dismiss the Indictment because it is facially defective, Motion to Dismiss Indictment due to improper venue, and Request for the Grand Jury Transcripts are hereby **DENIED**.

**IT IS SO ORDERED.**

Dated: August 10, 2017

Hon. Gonzalo P. Curiel
United States District Judge